O’Connor, J.,
dissenting.
{¶ 80} Because the majority focuses its attention on two chapters of the Revised Code that are immaterial to this case (Chapters 2133 and 2151) and relies heavily on public policy arguments to usurp the legislative grant of authority to the probate court, I must respectfully dissent.
{¶ 81} The majority gives precedence to the rights of the parents over the best interests of the child by reversing the judgment of the court of appeals. In the initial part of the opinion, the majority claims that this case solely involves the “narrow legal issue of whether the Summit County Probate Court exceeded its *44 statutory authority.” It further correctly states that this case “does not require us to decide whether it would be in Aideris best interest to have life-supporting treatments withdrawn and comfort care administered or whether the constitutional rights of his parents were violated.”
{¶ 82} Yet, when addressing the topic of guardianship, the majority states, “ ‘[A] parent’s desire for and right to “the companionship, care, custody and management of his or her children” is an important interest that “undeniably warrants deference and, absent a powerful countervailing interest, protection,” ’ ” quoting Lassiter v. Dept. of Social Servs. (1981), 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640, and Stanley v. Illinois (1971), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. Later, the majority reiterates its focus on the fundamental rights of the parent when citing Santosky v. Kramer (1982), 455 U.S. 745, 753-754, 102 S.Ct. 1388, 71 L.Ed.2d 599, which addresses the parents’ fundamental rights in the care, custody, and management of their children and the provision of fundamentally fair procedures when the state moves to intervene. This is a discussion of the very parental constitutional right the majority declared irrelevant.
{¶ 83} It is fundamental that R.C. 2133.08 applies only to adults and therefore its dictates have no relevance to the case at hand. The bill that enacted this statute also modified the Durable Power of Attorney for Health Care Act, R.C. 1337.11 et seq., and stated, “The General Assembly declares that its several intents in enacting Amended Substitute Senate Bill No. 13 of the 118th General Assembly [the bill that first enacted the Durable Power for Health Care Act] did not include any intent to affect the ability of competent adults or the guardians of incompetents or minors to make informed health care decisions for themselves or their wards.” (Emphasis added.) Section 5 of Am.Sub.S.B. No. 1, 144 Ohio Laws, Part I, 64. R.C. Chapter 2133 establishes Ohio’s do-not-resuscitate law for adults and complements the durable power of attorney for health care. Each expressly applies only to adults. R.C. 1337.12(A)(1); 2133.08(A)(1). Both involve end-of-life care for adults. The General Assembly expressly stated when enacting R.C. Chapter 2133 that provisions relating to terminally ill adults do not affect the ability of the guardian of a minor to make informed medical decisions. Aiden is an infant. Accordingly, R.C. 2133.08 does not affect this case.
{¶ 84} The essence of this probate case is that the actions of the parents necessitated the appointment of a guardian. R.C. 2111.06 provides that “[a] guardian of the person of a minor shall be appointed as to a minor * * * whose parents are unsuitable persons to have the custody and tuition of such minor.” The nature of the injuries to Aiden and the circumstances stated in the majority opinion clearly support the probate court’s finding that the parents are “unsuitable persons.”
*45 {¶ 85} R.C. 2111.50(F) unquestionably authorizes the probate court to make decisions regarding “medical or surgical cdre or treatment of incompetents or minors subject to guardianship, [for] the probate court has full parens patriae powers unless otherwise provided by a section of the Revised Code.” The decision to remove life-sustaining measures is such a decision. See In re Guardianship of Crum (1991), 61 Ohio Misc.2d 596, 580 N.E.2d 876 (probate court has power under R.C. 2111.50 to authorize guardian of a minor to refuse or terminate life-sustaining care of ward).
{¶ 86} The majority interjects a layer of procedure that is not mandated by the legislature. It is not a prerequisite that the parents’ rights be terminated before the probate court can act. The termination of parental rights is governed by R.C. Chapter 2151 and is wholly independent of the appointment of a guardian. Parental rights cases are adjudicated by juvenile courts. See, e.g., R.C. 2151.414. Adjudicating the necessity of a guardianship is the province of probate courts. See R.C. 2111.06. While in the case of a minor, the powers of the courts may overlap, the two courts serve different roles. A probate court may appoint a guardian over decisions of the person and the estate where the parents are “unsuitable” to serve as guardian. R.C. 2111.06. The probate court also has the power to appoint a limited guardian where it serves the best interest of the ward and where only certain aspects of the ward’s person or estate need to be safeguarded. See R.C. 2111.02(B)(1). In contrast, a juvenile court may terminate parental rights where a child is abused, dependent, or neglected. R.C. 2151.353. The role of the juvenile court then is to appoint a person or entity to raise the child in a suitable environment. Id. A juvenile court’s decision may result in temporary custody or permanent custody, but it cannot be fragmentary. Disputes arising from the overlapping power of the courts are not new. See Hoffman v. Hoffman (1864), 15 Ohio St. 427, 1864 WL 51 (a probate court cannot by letters of guardianship interfere with a child custody adjudication of another court). Juvenile courts are equally bound by prior probate rulings. In re Miller (1986), 33 Ohio App.3d 224, 515 N.E.2d 635 (where a probate court appoints a guardian for a minor child, the probate court retains continuing and exclusive jurisdiction over the ward and the guardian; thus, a juvenile court is without jurisdiction to grant custody of the ward to another person until the guardianship has been terminated). Here, the mother and father consented, in effect, to the Richland County Juvenile Court’s finding that Aiden was a “dependent/abused” child and the grant of temporary custody of Aiden to Richland County Children Services Board (“RCCSB”).[2] According to the court below, RCCSB moved for an order to withdraw life-sustaining treatment from Aiden, and the juvenile court responded by ordering, “All decisions regarding medical care for Aiden Hemlich *46 [sic], minor child, shall be made jointly by [RCCSB] and the child’s parents, upon the advice of the child’s physicians.” However, the juvenile court stated that a court of competent jurisdiction could supersede the medical authority granted by it. Thus, the juvenile court found that it is without jurisdiction over this case because it lacks authority to grant the requested relief. This is a guardianship case. Jurisdiction was properly in the hands of the probate court.
{¶ 87} The crux of the majority’s argument that the probate court lacked the authority to permit the guardian to withdraw life-supporting treatment is a statement that this decision is not a medical one. The finding that the withdrawal of life-supporting treatment goes beyond the scope of a medical decision is stated without any support whatsoever. To the contrary, the decision that a child-patient has permanently lost high-level brain function and should be allowed to die is a decision relating to medical care or treatment, and as such must be made with the best interests of the child-patient foremost in mind. See In re Guardianship of Myers (1993), 62 Ohio Misc.2d 763, 773, 610 N.E.2d 663; In re Guardianship of Crum (1991), 61 Ohio Misc.2d 596, 580 N.E.2d 876; 77 Corpus Juris Secundum (1994) 552, Right to Die, Section 5. The act of withdrawing life-support mechanisms and administering comfort care will permit Aiden to die, not from an overt act of the medical professionals but from the natural consequences of the severe injuries inflicted upon this child. The majority acknowledges as much.
{¶ 88} The overwhelming medical expert testimony agreed on the nature of the injuries, the manner in which they were inflicted, and the prognosis for the child. The probate court and the guardian acted within the powers granted them under R.C. 2111.50 when they decided to withdraw life-sustaining treatment from Aiden.
{¶ 89} The majority concludes, “The fact that a child is in a permanent vegetative state is not sufficient reason to deny parental rights, absent evidence of abuse or neglect. The right to withdraw life-supporting treatment for a child remains with the child’s parents until the rights are permanently terminated.” As previously discussed, this appeal did not emanate from proceedings in juvenile court. A discussion of parental rights is misplaced.
{¶ 90} The issue we are presented with is whether the probate court abused its discretion under R.C. Chapter 2111. Here the probate court was faced with overwhelming evidence of severe physical abuse by one parent and the other parent’s allegiance to the alleged abusing parent. The evidence supporting the proposition that the father caused Aiden’s injury is sufficient to find the father unfit. The mother’s ability to decide what is in Aiden’s best interest has been hopelessly compromised by her knowledge that when Aiden dies, the father will be charged with murder. Her conflict of interest is glaringly obvious. A conflict *47 of interest may justify the appointment of a guardian. In re Guardianship of Muehrcke, Cuyahoga App. No. 81353, 2003-Ohio-176, 2003 WL 132422. Unfortunately, the majority imagines future scenarios that are irrelevant to the case at hand. To presume that Aiden’s mother will suddenly change course to do anything but support the father and align with what she perceives as best for Aiden is ludicrous. The probate court, following a finding that the parents are unsuitable, stands in the shoes of the parents. That is all that is required when decisions, including medical decisions, have to be made for children whose parents are not suitable to do so.
E.P. Markovich Co., L.P.A., and Edward P. Markovich, for appellants.
{¶ 91} The conclusion that withdrawing life support would be the functional equivalent of a permanent termination of parental rights again focuses on the unnecessary. As discussed above, the probate court has the statutory authority to appoint a guardian for the purpose it did in this case. The majority concedes this point but reasons that until parental rights are terminated, the appointment of a guardian with “authority to withdraw life-supporting treatment for Aiden is premature.” The only provision in the Revised Code that can be read to grant authority to appoint such a guardian over a child is R.C. 2111.50. So the majority must agree that the probate court is the court to exercise such authority.
{¶ 92} The majority finds this authority limited by the United States Supreme Court’s pronouncement, “ ‘When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures,’ ” quoting Santosky v. Kramer, 455 U.S. at 754, 102 S.Ct. 1388, 71 L.Ed.2d 599. The majority finds this case to be analogous to the termination of parental rights because the end result of the guardianship will be Aiden’s death. Even if the analogy were accurate, the majority fails to state how the procedure provided for under R.C. Chapter 2111 is not fundamentally fair. In any event, the analogy is immaterial and confuses the issue. The probate court is not deciding whether Aiden should be permanently removed from his parents. This is not a custody case. It should not be treated as one.
{¶ 93} The probate court’s appointment of a medical guardian is authorized under R.C. Chapter 2111. R.C. 2111.50(F) authorizes the court and guardian to withdraw life support. R.C. Chapters 2133 and 2151 are not implicated. They do not control or even inform this decision. Because the probate court acted within its statutory authority when appointing the limited guardian, I vote to affirm its decision and that of the court of appeals.
*48 Brouse McDowell, Linda B. Kersker, Jay E. Krasovec, and Clair E. Dickinson, for appellee Ellen Kaforey, guardian.
David Kitzler, for appellee Richland County Children Services Board.

. RCCSB is a party to this ease and is aligned with the appellees.